UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCH ON d/b/a FUTURE COALITION,

    Plaintiff,

v.

FUTURE COALITION PAC,

    Defendant.

Case No. **24-cv-12670-SKD-KGA**

Hon. **Susan K. DeClercq**

---

## EMERGENCY EX PARTE MOTION FOR
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

March On d/b/a Future Coalition ("Future Coalition"), through its counsel Bodman PLC respectfully requests that this Court enter a temporary restraining order under Federal Rule of Civil Procedure 65(a) in the form of the attached Exhibit L. Future Coalition's motion seeks a temporary restraining order prohibiting Defendant Future Coalition PAC (the "PAC") from infringing on Future Coalition's registered trademarks.

In support of its motion, Future Coalition relies on the accompanying brief and exhibits, as well as the facts set forth in its verified complaint.

4895-2286-1037_6

Respectfully submitted,

BODMAN PLC

By: /s/ Michelle T. Czapski
   Michelle T. Czapski (P47267)
   Justin P. Bagdady (P79764)
   Erica J. Sarver (P80106)
   6th Floor at Ford Field
   1901 St. Antoine Street
   Detroit, MI 48226
   (313) 259-7777
   MCzapski@Bodmanlaw.com
   JBagdady@Bodmanlaw.com
   ESarver@Bodmanlaw.com

Dated: October 9, 2024.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCH ON d/b/a FUTURE COALITION,

     Plaintiff,

v.

FUTURE COALITION PAC,

     Defendant.

Case No. _____

Hon. _____

---

**BRIEF IN SUPPORT OF FUTURE COALITION'S EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND ................................................................. 3

LEGAL STANDARD .......................................................................... 7

ARGUMENT ..................................................................................... 8

    I.     Future Coalition Will Succeed On The Merits Of Its Claims. .................9

    II.    Future Coalition Will Be Irreparably Harmed If The PAC's Infringement Is Allowed To Continue. ....................................17

    III.   The PAC Will Not Be Harmed By An Injunction. .................................18

    IV.   The Public Interest Supports Issuance Of The Injunction. .....................18

CONCLUSION ..................................................................................20

# TABLE OF AUTHORITIES

## Cases

*All for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498 (5th Cir. 2018)...........16

*Audi AG v. D'Amato*, 469 F.3d 534 (2006) ............................................................15

*AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258 (6th Cir. 2021).................17

*Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499 (6th Cir. 2023) ..14

*Buckley v. Valeo*, 424 U.S. 1 (1976) .........................................................................2

*Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996)...................................................................................................................17

*Citizens United v. FEC*, 558 U.S. 310 (2010)................................................. 2, 9, 20

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999)...........................................................................................................19

*Committee for Idaho's High Desert v. Yost*, 881 F. Supp. 1457 (D. Idaho 1995) ..18

*EAT BBQ LLC v. Walters*, 47 F. Supp. 3d 521 (E.D. Ky. 2014)............................14

*Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642 (6th Cir. 1982).................15

*Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598 (1888) .......17

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987 (Fed. Cir. 1986)...................................................................................................................17

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ...............................10

*Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100 (6th Cir. 1991) ............................................................................................................................14

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023).....................11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004)...................................................................................................................10

4895-2286-1037_6

*Libertarian Nat'l Comm., Inc. v. Saliba*, 2024 U.S. App. LEXIS 21832 (6th Cir. Aug. 28, 2024) ........................................................................................ 12, 13

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377 (6th Cir. 2006) ......................................................................................................... 19

*Lucky's Detroit, LLC v. Double L, Inc.,* 533 F. App'x 553 (6th Cir. 2013) ............ 18

*McConnell v. FEC*, 540 U.S. 93 (2003) ..................................................................... 2

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150 (6th Cir. 1991) ....................................................................................................... 8

*Moltan Co. v. Eagle-Picher Industries, Inc.*, 55 F.3d 1171 (6th Cir. 1995) ............... 8

*Northeast Ohio Coalition For Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006) ................................................................................................................... 8

*Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008) ........................... 8

*Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario Dominicano,* 312 F. Supp. 2d 1 (D.D.C. 2004) ................................................... 16

*PGP, LLC v. TPII, LLC*, 734 F. App'x 330 (6th Cir. 2018) ................................... 10

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522 (1987) ................................................................................................................. 11

*Sherwin-Williams Co. v. JP Int'l Hardware, Inc.*, 988 F. Supp. 2d 815 (N.D. Ohio 2013) ............................................................................................................... 14

*United We Stand America, Inc. v. United We Stand, America New York, Inc.* 128 F.3d 86 (2d Cir. 1997) .................................................................................. 13, 15

*University of Texas v. Camenisch*, 451 U.S. 390 (1981) ........................................... 8

*Victory Lane Quick Oil Change, Inc. v. Darwich,* 799 F. Supp.2d 730 (E.D. Mich. 2011) ............................................................................................................... 10

*Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784 (9th Cir. 2012) ................................................................................................................. 13

*Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595 (6th Cir. 1991) .............. 10, 18

iii

*Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988).........................................14

*Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.*, 809 F. Supp. 267 (S.D.N.Y. 1992) 12

**Statutes**

15 U.S.C. § 1114(1) .............................................................................................7, 10

15 U.S.C. § 1114(1)(a).............................................................................................7

15 U.S.C. § 1125(a) .................................................................................................7

**Other Authorities**

J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23:20
   (4th ed. 2000)......................................................................................................14

J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 9.02
   (3d ed. 1994).......................................................................................................19

4895-2286-1037_6

## INTRODUCTION

This trademark infringement action arises from Defendant Future Coalition PAC's ("the PAC") deceptive political advertising, which unlawfully reproduces Plaintiff March On d/b/a Future Coalition's ("Future Coalition") registered trademark "FUTURE COALITION" and falsely uses it as a source identifier. The PAC's actions are an express effort to mislead media consumers, specifically Michigan voters, by associating its messages with an established, unrelated organization. The PAC uses unlawful, deceitful, and infringing methods to either discourage its targets from voting or to change their votes to the PAC's liking.  The PAC continues to issue and author political advertisements and social media campaigns in the name of FUTURE COALITION, which is black-letter trademark infringement and is likely to confuse consumers into believing that Future Coalition—a reputable progressive nonprofit—is the source of the PAC's messages. Future Coalition, a nonprofit established to advance progressive causes by supporting grassroots organizing nationwide, has not consented to the use of its registered trademarks and is not associated with Future Coalition PAC.[1]

For more than 100 years, courts have recognized the importance of disclosing truthful and accurate information to the American public about the source of political

---

[1] *See generally*, Huffington Post, *GOP Group Targets Muslim Voters in Michigan With Ads Touting Harris' Ties to Israel*, Sept. 2, 2024, https://www.huffpost.com/entry/gop-group-targets-muslim-voters-in-michigan-with-ads-touting-harris-ties-to-israel_n_66d62034e4b05dc832135198, accessed October 7, 2024

spending, rather than "hiding behind dubious and misleading names." *Citizens United v. FEC*, 558 U.S. 310, 366 (2010), quoting *McConnell v. FEC*, 540 U.S. 937 (2003). Providing the electorate with accurate information about the source of the political content that they consume empowers the American public to "make informed choices in the political marketplace." *Id.* This information "allows voters to place each candidate in the political spectrum more precisely than is often possible solely on the basis of party labels and campaign speeches." *Buckley v. Valeo*, 424 U.S. 1, 67 (1976).

By infringing on Future Coalition's registered trademarks, Defendant Future Coalition PAC not only erodes public confidence in Future Coalition's marks but is also willfully misleading the public as to the source of the PAC's political advertisements. Both the damage to Future Coalition's trademark rights and the PAC's deception of Michigan voters constitute irreparable harm that is properly addressed by injunctive relief. As such, Future Coalition requests that the Court enter a temporary restraining order in the form attached as Exhibit L to immediately stop the PAC's unlawful actions, and that the temporary restraining order be converted to a preliminary injunction preventing further infringement during the pendency of this action.

4895-2286-1037_6

## FACTUAL BACKGROUND

Future Coalition is a nonprofit organized in 2017 following the Women's March on Washington, which "coalesced a fight for women's rights, human rights, LGBTQ rights, racial justice, immigration reform, climate action and more."[2] Future Coalition's mission is to support progressive social and political causes, mobilize youth and women voters, and otherwise enhance grassroots participation in voting and civic participation nationwide. In 2018, March On launched Future Coalition, a coalition of youth-led activist organizations focused on the social and political issues that are most salient to young Americans.[3] Future Coalition is "an intergenerational organization committed to resourcing movement-building solutions led by and for young people addressing the needs of their communities."[4] Future Coalition supports a variety of grassroots activities to advance its mission:

> Future Coalition is committed to financing, resourcing, and supporting the [get out the vote] efforts of youth-centered local organizations engaging young people in our target states: Arizona, Georgia, Florida, Alaska, Mississippi, Nevada, North Carolina, Texas, **Michigan** and Wisconsin.[5]

Future Coalition actively solicits and accepts donations to support its work nationwide, allowing it to provide these serves in Michigan and across the country.

---

[2] *See* http://www.futurecoalition.org/history/#2017, accessed on October 6, 2024.

[3] *See* http://www.futurecoalition.org/history/, accessed on October 5, 2024.

[4] *See* http://www.wearemarchon.org, accessed on October 5, 2024.

[5] *See* http://www.futurecoalition.org/civic/, accessed on October 5, 2024 (emphasis added).

3

Civic and political engagement is at the core of Future Coalition's mission.   It maintains a "Voter Hub" on its website, http://www.futurecoalition.org, that includes informational content on election-related topics such as the electoral college, how to register to vote, as well as an application process for grants to "promote connections and partnerships across local, grassroots groups."[6]

In September of 2023, Future Coalition applied for trademark registration for its trademarks FUTURE COALITION (reg. no. 7,488,787) and



(reg. no. 7,488,788) (herein the "Future Coalition Marks"). It received certificates of registration for the Future Coalition Marks on August 27, 2024. See **Exhibits A(1) and A(2), Trademark Registration Certificates**. Future Coalition has used both marks since August of 2018.

Defendant, an independent expenditure-only committee identifying itself as "Future Coalition PAC" (the "PAC"), was first registered with the FEC in July of 2024. **Exhibit B, July 2024 Statement of Organization**. The PAC was organized to "receive unlimited contributions from individuals, corporations, labor unions and other PACs for the purpose of financing independent expenditures and other

---

[6] *See* http://www.futurecoalition.org/hub/, accessed on October 6, 2024.

4895-2286-1037_6

independent political activity."[7] It lists its Treasurer as Ray Zaborney, who is a "political strategist for some of the Republican Party's top elected officials, party committees, and corporate leaders."[8]  The PAC not affiliated with Future Coalition in any way, and admits in its FEC filings that it is not connected to any other organization. **Exhibit C, September 2024 Statement of Organization**. The PAC maintains a website at http://www.futurecoalitionpac.com. Both on its website and on social media, the PAC refers to itself as "Future Coalition:"



---

[7] *See* https://www.fec.gov/press/resources-journalists/political-action-committees-pacs/, accessed on October 5, 2024.

[8] *See* https://www.redmaverickmedia.com/our-team/, accessed on October 6, 2024.

[9] *See* http://www.x.com/futurecoalpac/, accessed on October 6, 2024.

**THE FUTURE COALITION SUPPORTS A MORE PROSPEROUS AMERICA BY SEEKING TO CREATE A MORE VIBRANT ECONOMY, SAFER COMMUNITIES, AND PROJECTING STRENGTH ABROAD.** [10]

In the summer of 2024, the PAC began publishing political advertisements on social media platforms including X (formerly Twitter), Facebook, and YouTube. **Exhibit D, Declaration and Compiled Advertisements**. Each of these advertisements identified the source of the information as "Future Coalition PAC." As recently as October 4, 2024, the PAC sent political mailers to Michigan voters, which likewise identified "Future Coalition PAC" as their source. **Exhibit D(9), Sample Mailer**. As recently as October 7, 2024, the PAC has contacted Michigan voters by text message, again identifying "Future Coalition PAC" as the source of the message. **Exhibit D(10), Sample Text Message.** As of October 9, 2024, the PAC has also arranged for its advertisement to be displayed on a billboard located on Ford Road at Brace Street, in Detroit Michigan. **Exhibit D(11), Photograph of Billboard**. Since the beginning of 2024, the PAC has spent $437,000 on advertising in the State of Michigan. **Exhibit E, Google Ads Transparency Report**. On October 4, 2024, the PAC disclosed that it paid $66,680.00, purportedly to support Michigan Democratic Senate Candidate Elissa Slotkin. **Exhibit F, 24/48 Hour Report of Campaign Expenditures**. Future Coalition did not authorize the PAC to use the Future Coalition Marks, nor was permission to use the Marks ever sought.

---

[10] *See* http://www.futurecoalitionpac.com, accessed on October 6, 2024.

4895-2286-1037_6

On September 13, 2024, Future Coalition sent a cease and desist letter to the PAC. **Exhibit G, Cease and Desist Letter**. The PAC did not respond and continued publishing political advertisements bearing the name "Future Coalition PAC." Future Coalition then submitted takedown notices to X, Facebook, and YouTube, notifying each social media platform of the PAC's trademark infringement and requesting that its advertisements be taken down. **Exhibit H, Compiled Takedown Notices**. One platform – Facebook – ultimately removed the PAC's page and advertisements in response to Future Coalition's dispute. **Exhibit I, Facebook Correspondence**. In connection with the Facebook dispute, Future Coalition received a letter from Attorney James Tyrrell on behalf of the PAC. **Exhibit J, Tyrrell Letter**. In it, Attorney Tyrrell stated on the PAC's behalf that "Future Coalition PAC" is separate and distinct from "Future Coalition" because it includes the descriptive appendage – PAC.

Contemporaneous with the filing of this motion, Future Coalition filed a complaint against the PAC. ECF No. 1. In its Complaint, Future Coalition sets forth Lanham Act claims against the PAC under 15 U.S.C. § 1114(1)(a) and § 1125(a).

## LEGAL STANDARD

Preliminary injunctions and temporary restraining orders are extraordinary remedies designed to preserve the status quo pending further proceedings on the merits, *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) . The decision to grant or to deny a temporary restraining order falls within the discretion of a

district court.  *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

This Court considers four factors in deciding whether to issue a temporary restraining order or a preliminary injunction:

a)   Plaintiff's likelihood of success on the merits;

b)   The likelihood of irreparable harm to the plaintiff;

c)   The harm suffered by the defendant if relief is granted; and

d)   Whether the public interest would be served by the issuance of an injunction.

*Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F. 3d 1171, 1175 (6th Cir. 1995). The four factors are not prerequisites that must be met but are interrelated concerns that must be balanced together. *Northeast Ohio Coal. For Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay. *Id.; Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)

## ARGUMENT

All four factors weigh in favor of granting injunctive relief to Future Coalition. Future Coalition will succeed on the merits of its trademark infringement claim. It will be irreparably harmed if the PAC's infringement is allowed to continue throughout the pendency of this litigation. Because of the limited time remaining

8

4895-2286-1037_6

before the 2024 election, the PAC's active deception of the American electorate and its abuse of the Future Coalition Marks must be addressed now. The PAC will not be harmed if it is prevented from using the Marks, because it can continue its activities without infringement. The public interest strongly supports issuance of an injunction in this instance because preventing the PAC's infringing use of Future Coalition's name will prevent public confusion. This is wholly consistent with the public's interest in truthful and accurate information about campaign spending, and with *Citizens United v. FEC*. The fact that fewer than thirty days remain until the upcoming election emphasizes the urgency of the threat to the Future Coalition Marks.  Future Coalition is further entitled to a preliminary injunction that stops the PAC's flagrant infringement of the Future Coalition Marks until its Lanham Act claims have been fully adjudicated.

## I.    Future Coalition Will Succeed On The Merits Of Its Claims.

In a trademark infringement case, the likelihood of success factor is "often decisive" in determining whether a preliminary injunction should issue. *PGP, LLC v. TPII, LLC*, 734 F. App'x 330, 332 (6th Cir. 2018). The Sixth Circuit has held that "[i]f the movant is likely to succeed on an infringement claim, irreparable injury is ordinarily *presumed*, and the public interest will usually favor injunctive relief." *Id*., citing *Wynn Oil Co. v. Am. Way Serv. Corp*., 943 F.2d 595, 608 (6th Cir. 1991) and *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 532–33 (6th Cir. 2004) (emphasis added).

4895-2286-1037_6

The PAC's infringement of the Future Coalition Marks could not be clearer and Future Coalition is likely to succeed on its federal trademark infringement claims which are governed by 15 U.S.C. § 1114(1). To succeed on its Lanham Act claims,[11] Future Coalition must demonstrate: (1) that it owns the registered trademarks at issue; (2) that the PAC is using the trademarks in commerce; and (3) that the PAC's use of the Future Coalition Marks is likely to cause confusion. *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009).

**A.    Future Coalition Owns The Future Coalition Marks.**

As established by Exhibits A(1) and A(2), Future Coalition is the owner of the registered trademarks "Future Coalition" (Reg. no. 7,488,787) and



(Reg. no. 7,488,788). The first factor is satisfied.

**B.    The PAC Has Used The Future Coalition Marks In Commerce Without License Or Consent.**

There can be no dispute that the PAC did not obtain a license to use the Future Coalition Marks in connection with its political advertisements. Quite the opposite, the PAC has usurped the Future Coalition Marks in an effort to improperly access the goodwill cultivated by Future Coalition since 2018. Worse, the PAC has done so

---

[11] The same analysis applies to both of Future Coalition's Lanham Act claims. *Victory Lane Quick Oil Change, Inc. v. Darwich,* 799 F. Supp.2d 730, 735 (E.D. Mich. 2011) ("Under the Lanham Act . . . we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin").

to mislead Michigan voters about the source of its political advertisements.

While political speech is generally protected by the First Amendment of the United States Constitution, that protection *does not* extend to trademark infringement:

> The mere fact that the [defendant nonprofit] claims an expressive, as opposed to a purely commercial purpose does not give it a First Amendment right to appropriate to itself the harvest of those who have sown.

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 536, 541 & n.19 (1987) (cleaned up). Where a defendant improperly uses a trademark as a source identifier, "trademark law generally prevails over the First Amendment." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 159 (2023), citing *Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992).

In *Libertarian Nat'l Comm., Inc. v. Saliba*, the Sixth Circuit affirmed in part the issuance of a preliminary injunction barring the defendants from using the Libertarian Party's registered trademarks. *Libertarian Nat'l Comm., Inc. v. Saliba*, 2024 U.S. App. LEXIS 21832, at *2 (6th Cir. Aug. 28, 2024) (attached as **Exhibit K**). The defendants were a group of individuals formerly associated with the Michigan affiliate of the Libertarian Party. *Id*. at *2-*3. After an internal dispute, the defendants were removed from the executive board and established a splinter group that they held out as the official "Libertarian Party of Michigan." *Id*. at *3.

Defendants argued that their use of the Libertarian Party trademarks was protected by the First Amendment, and that they did not use the trademarks in commerce because they did not offer goods or services. *Id.* at *6. The Court disagreed.

Because the "defendants used the LNC's trademark to advertise a political convention, operate a website, promulgate political news and party activities, file campaign finance reports, endorse candidates, and solicit donations, they 'unquestionably render[ed] a service'" as contemplated by the Lanham Act. *Id.* at *12-*13. The Court's reasoning relied on decisions from the Second and Ninth Circuits, both of which held that political activities qualify as "services" under the Lanham Act and are thus subject to its enforcement. *See also United We Stand America, Inc. v. United We Stand, America New York, Inc.* 128 F.3d 86, 90 (2d Cir. 1997) (holding that "services characteristically rendered by a political party to and for its members, adherents, and candidates," such as political organizing, endorsing candidates, and distributing partisan material constitute "services" under the Lanham Act); and *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 795 (9th Cir. 2012) ("The Libertarian Party correctly points out that 'services' can include activities performed by a political party.").

Here, the PAC operates a website, generates political advertisements that are shared on various social media platforms and to Michigan voters via the United States Postal Service, submits official filings to the FEC, and broadcasts political views on candidates for political office. *See* Ex. E. These are the exact types of

4895-2286-1037_6

political activities that qualified as a "service" subject to Lanham Act enforcement in *Saliba*. The PAC unquestionably uses Future Coalition's registered trademark in interstate commerce that is subject to the Lanham Act, satisfying the second factor of Future Coalition's claims.

### C.    The PAC's Infringing Use Is Likely to Cause Confusion.

The PAC's misuse of the Future Coalition Marks is likely to confuse the public as to the origin of the PAC's advertisements, exactly as the PAC intended.  In the Sixth Circuit, courts typically weight eight factors to determine whether a likelihood of confusion exists: "(1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant in selecting the mark, and (8) the likelihood of expansion of the product lines." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 509 (6th Cir. 2023).  These factors "imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Grp., Inc. v. Home Mktg. Specialists*, 931 F.2d 1100, 1107 (6th Cir. 1991).  "Each case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case … [t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.*

4895-2286-1037_6

Here, the most critical factors are the similarity of the marks (which are in effect identical because the descriptive acronym "PAC" is inconsequential and should be afforded no weight in a trademark analysis)[12], the relatedness of the goods or services (both organizations engage in political activism), the marketing channels used (which are the same or similar and primarily online), the likely degree of purchaser care (which is low in an election cycle where Michigan voters are bombarded with political advertisements), and the intent of the defendant in selecting the mark (which, upon information and belief, was intentionally chosen for the express purpose of creating confusion).

The PAC chose its infringing mark "Future Coalition PAC" with the intent to capitalize on the trust and goodwill cultivated by Future Coalition. Where a "mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity." *Audi AG v. D'Amato*, 469 F.3d 534, 544 (2006), quoting *Frisch's Restaurants v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir. 1982). Intent need not be established by direct evidence but may be inferred. *Id*. The words "Future Coalition"

---

[12] This factor alone should be dispositive. *See Sherwin-Williams Co. v. JP Int'l Hardware, Inc.*, 988 F. Supp. 2d 815, 822 (N.D. Ohio 2013) ("Defendant's use of an identical mark for identical goods causes a likelihood of confusion") (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190-91 (6th Cir. 1988) and J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 23:20 (4th ed. 2000) ("Cases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement"). *See also EAT BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 530 (E.D. Ky. 2014) ("In situations where the marks are identical, there is almost never a dispute regarding confusion").

have no substantive relevance to the content of the PAC's advertisements. They serve only to imply a relationship with Future Coalition where none exists.

Numerous courts have held that the use of a mark by two different political organizations is likely to cause confusion. "If different organizations were permitted to employ the same trade name in endorsing candidates, voters would be unable to derive any significance from an endorsement, as they would not know whether the endorsement came from the organization whose objectives they shared or from another organization using the same name." *Saliba, supra*, at *20, quoting *United We Stand America,* 128 F.3d at 90; *see also All for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 507-513 (5th Cir. 2018) *and Partido Revolucionario Dominicano (PRD) v. Partido Revolucionario Dominicano,* 312 F. Supp. 2d 1, 14 (D.D.C. 2004) (both finding that a competing political organization's use a similar name and logo confusing).

Further, the PAC is affiliated with individuals who hold themselves out as political strategists for the Republican Party. It naturally follows that the PAC intentionally chose a name associated with a reputable progressive nonprofit to enhance the facial credibility of its advertisements "supporting" Kamala Harris and Elissa Slotkin. If an injunction is not granted, voters[13] will continue to receive political advertisements that appear to contain Future Coalition's endorsement (or

---

[13] The majority of the PAC's advertising spending appears to be attributable to Michigan, although the PAC's online advertisements are accessible across the United States. See Exhibit E.

4895-2286-1037_6

criticism) of candidates for elected office. It is likely that those voters will be confused and mislead as to the origin of those communications. The likelihood of confusion factor is satisfied.

**D.    Appending "PAC" To The Future Coalition Marks Is Legally Irrelevant.**

The PAC may argue, as it has in the past, that its inclusion of "PAC" in its registered name and on its political advertisements somehow renders "Future Coalition PAC" a separate and distinct mark that does not infringe on the Future Coalition Marks. As a preliminary matter, the PAC refers to itself as "Future Coalition" on its website and on social media—without any reference to "PAC"—which moots this argument altogether.

In addition, the inclusion of a descriptive word or phrase alongside a registered mark does not transform the mark into a separate and distinct mark. "A generic term is the common descriptive name of a class of goods or services." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc*., 782 F.2d 987, 989 (Fed. Cir. 1986). Adding generic terms such as Corp., Inc., or Co. to the end of a phrase "does not add any trademark significance." *Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598, 602 (1888). Like Corp., Inc., or Co., PAC is a generic term that identifies a type of organization. Appending "PAC" to the Future Coalition Marks does not transform "Future Coalition PAC" into a separate and distinct mark and should be afforded little-to-no weight.  *See also AWGI, LLC v. Atlas Trucking*

16

*Co., LLC*, 998 F.3d 258, 266 (6th Cir. 2021) (affirming the trial court's finding that the two marks at issue were "'identical' because they include Atlas 'as the dominant factor.' It then discounted 'all words other than ATLAS,' as merely those constituting 'generic descriptors of the services' the parties offer."); *see also Champions Golf Club, Inc. v. Champions Golf Club, Inc.*, 78 F.3d 1111, 1119 (6th Cir. 1996) ("[i]t is perhaps worth noting that while similarity alone does not compel a determination that marks are likely to be confused … it is a factor entitled to considerable weight") (cleaned up).

## II.    Future Coalition Will Be Irreparably Harmed If The PAC's Infringement Is Allowed To Continue.

Future Coalition is entitled to control its distinct identity, and to decide for itself whether and how the Future Coalition Marks will be used to endorse or critique candidates for elected office. Every day the PAC is allowed to continue its misuse of the Future Coalition Marks accelerates the degradation of the Marks and irreparably harms Future Coalition. The Sixth Circuit has specifically held that "[i]n trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement." *Lucky's Detroit, LLC v. Double L, Inc.,* 533 F. App'x 553, 555 (6th Cir. 2013) (citing *Wynn Oil Co.,* 943 F.2d at 608).

> [I]t is clear that the names of charitable, educational, and other non-profit organizations are entitled to protection under the Lanham Act regardless of whether or not they place products into the stream of commerce:

4895-2286-1037_6

> The fact that an organization is non-profit and sells no goods does not take it out of the protection of the law of unfair competition.
>
> * * *
>
> The retention of a distinct identity here is as important as it is to a commercial company. If the distinct identity of such non-profit organizations is lost through a confusingly similar use of a name by another, then it is obvious that the organization will have serious difficulty in raising funds and attracting members and support.

*Committee for Idaho's High Desert v. Yost*, 881 F. Supp. 1457, 1471 (D. Idaho 1995) (citing J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 9.02[1] at 9-11 (3d ed. 1994)), *overruled in part on other grounds by Committee for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996). The likelihood of public confusion as to the source of the PAC's political advertisements demonstrates that Future Coalition will suffer irreparable harm if the infringement does not stop now.

## III.     The PAC Will Not Be Harmed By An Injunction.

The only activity that Future Coalition seeks to prevent is the improper use of the Future Coalition Marks by the PAC. Future Coalition does not seek an injunction that affects any other aspect of the PAC's activities, including the content of its political advertisements. As such, the PAC will not be harmed by an injunction.

## IV.     The Public Interest Supports Issuance Of The Injunction.

The United States Supreme Court has held that "[a] state has a compelling interest in protecting property interests in trade names." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999). There is also

4895-2286-1037_6

a public interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.,* 453 F.3d 377, 383 (6th Cir. 2006) (citation omitted). The public's right to accurate and truthful information about the source of political advertisements has also repeatedly been recognized and protected.

The PAC's infringement not only jeopardizes Future Coalition's trademark rights, but the public's ability to "make informed choices in the political marketplace." *Citizens United, supra*, at 366. The Court should not permit the PAC to hide behind its "dubious and misleading" name in an effort to continue misleading Michigan voters. *Id*. The PAC is free to continue supporting candidates and publishing political advertisements that accurately identify their source.  It should not be permitted to engage in deception under the gloss of Future Coalition. The impact of such deception is felt both by the legal owner of the Future Coalition Marks, whose rights have been infringed and whose goodwill is damaged, but also the public who is likely to be confused by the PAC's misuse of Future Coalition's marks.  The only impact on the public if the requested injunction is issued is that the public will be better informed of the source of the information they receive.

## CONCLUSION

Through its blatant infringement of the Future Coalition Marks and other deceptive conduct, the PAC is willfully attempting to mislead and confuse Michigan voters. Such attempts are anathema to Future Coalition's core purpose of encouraging informed civic and political engagement, and to its right to control its own goodwill, reputation, and use of its name and registered trademarks. Future Coalition will succeed on the merits of its Lanham Act claims, but in the meantime stands to suffer irreparable harm if the PAC is allowed to continue these abuses. Future Coalition therefore requests that this Court grant its motion and enter a temporary restraining order substantially in the form of the attached Exhibit L.

Respectfully submitted,

BODMAN PLC

By: /s/ Michelle T. Czapski
    Michelle T. Czapski (P47267)
    Justin P. Bagdady (P79764)
    Erica J. Sarver (P80106)
    6th Floor at Ford Field
    1901 St. Antoine Street
    Detroit, MI 48226
    (313) 259-7777
    MCzapski@Bodmanlaw.com
    JBagdady@Bodmanlaw.com
    ESarver@Bodmanlaw.com

Dated: October 9, 2024.

4895-2286-1037_6